**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X

J & J SPORTS PRODUCTIONS, INC.,

                                    Plaintiff,           **REPORT AND RECOMMENDATION**

      -against-                                **18-CV-05111 (NG) (ST)**

SALVATORE BARRETTA, individually
and D/B/A BROWNSTONE BAR &
RESTAURANT; and 277 GOLD INC., an
unknown business entity D/B/A
BROWNSTONE BAR & RESTAURANT

                                     Defendants.
---------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

On September 11, 2018, Plaintiff J & J Sports Productions, Inc. ("J & J") brought this action asserting several claims under the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. §§ 605 *et seq.*, against Salvatore Barretta ("Barretta") and 277 Gold Inc. ("277 Gold") (collectively, "Defendants"). Plaintiff moved for default judgment upon Defendants' failures to answer or otherwise respond to the Complaint despite proper service. On March 21, 2019, the Honorable Nina Gershon referred the motion to this Court for a report and recommendation.

Based on a review of the well-pleaded allegations and evidence presented in Plaintiff's filings, this Court respectfully recommends Plaintiff's motion for default judgment be granted in part and denied in part, and that damages be entered as described herein.

## BACKGROUND

### a. Factual History

Plaintiff, a California corporation, acquired exclusive nationwide closed-circuit rights to *Floyd Mayweather, Jr. v Andre Berto WBA/WBC World Welterweight Championship Fight*

*Program* (the "Program"), which was broadcast nationwide on September 12, 2015. Dkt. No. 1 ("Compl.") ¶¶ 6, 16. Plaintiff granted various commercial entities the rights to publicly exhibit the Program for a fee under sublicensing agreements. *Id.* ¶ 17. The interstate transmission of the Program was encrypted and made available only to those commercial locations that entered into these sublicensing agreements with Plaintiff. Dkt. No. 12-2 ("Gagliardi Aff.") ¶ 11. These entities were provided with electronic decoding equipment and satellite coordinates to receive the broadcast signal. *Id.*

At the time of the Program's broadcast, 277 Gold operated the commercial establishment doing business as Brownstone Bar & Restaurant, located at 277 Gold Street, Brooklyn, New York 11201. Compl. ¶ 7. Barretta is listed as the "Principal" on 277 Gold's New York State liquor license. *Id.* ¶ 8. Defendants were not authorized through a sublicensing agreement to display the Program. Gagliardi Aff. ¶ 3. Nevertheless, on the night of September 12, 2015, Defendants broadcasted the Program on its premises. Compl. ¶ 11. Plaintiff's investigator, Raymond Smith, observed the Program being broadcast on five televisions. Dkt. No. 12-3 at 23–24 ("Smith Aff."). Smith reported paying no cover charge and did not report seeing any advertisements of the Program at 277 Gold. *Id.* Smith also observed the capacity of 277 Gold to be approximately 100 persons and counted the number of patrons at three separate points during the night, finding twenty-three, twenty-three, and twenty-six patrons respectively. *Id.*

### b. Procedural History

Plaintiff brought this action against Defendants on September 10, 2018.[1] Compl. ¶ 8. 277 Gold was duly served with copies of the Summons and Complaint via the Secretary of State on

---

[1] Courts in this Circuit have adopted a three-year statute of limitations for violations of Section 605 of the FCA. *See, e.g., J & J Sports Prods. v. Taqueria Juarez Rest., Inc.*, No. 17-CV-4158 (NG) (LB), 2018 U.S. Dist. LEXIS 44749, at *3 n.3 (E.D.N.Y. Mar. 16, 2018), *adopted by*, 2018 U.S. Dist. LEXIS 74489 (E.D.N.Y. May 2, 2018).

2

September 24, 2018, and Barretta was duly served via a process server on December 12, 2018. Summonses Returned Executed, Dkt. Nos. 5, 9. Upon Defendants' failure to answer or otherwise respond to the Complaint, the Clerk of Court issued certificates of Defendants' default pursuant to Fed. R. Civ. P. 55(a). Dkt. Nos. 8, 11. Plaintiff filed the instant motion for default judgment on March 19, 2019. Dkt. No. 12 ("Mot. Default J.") at 1.

## DISCUSSION

### I.   Legal Standards

#### a.   Default Judgment

The Federal Rules of Civil Procedure set forth a two-part procedure for a plaintiff seeking default judgment against a defendant. Pursuant to Rule 55(a), a clerk must enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Upon this entry of default against the defendant, the court may enter a default judgment on a plaintiff's motion if the defendant does not appear or move to set aside the entry of default per Rule 55(c). Fed. R. Civ. P. 55(b)(2).

A defendant in default is deemed to have admitted all of the well-pleaded allegations concerning liability in the complaint. *See Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Default judgment is only appropriate, however, where the court, taking all factual allegations as true and drawing all reasonable inferences in favor of plaintiff, finds that plaintiff has sufficiently alleged defendant's liability as to each cause of action as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) ("[A]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of

action, since a party in default does not admit conclusions of law") (citations omitted). A district court retains the discretion to determine whether a default judgment is appropriate based on the specific circumstances of a given case. *Enron Oil Corp. v. Diakuhura*, 10 F.3d 90, 95 (2d Cir. 1993); *see also Taylor v. 312 Grand St. LLC*, No. 15-CV-5410 (BMC), 2016 U.S. Dist. LEXIS 36623, at *7 (E.D.N.Y. Mar. 22, 2016) ("[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right.") (citations omitted).

Unlike allegations pertaining to liability, allegations pertaining to damages are not deemed admitted upon entry of default. *See Greyhound Exhibitgroup*, 973 F.2d at 158. Rather, the Court must conduct an analysis to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). However, a court need not conduct an evidentiary hearing to determine damages so long as there is a basis for the damages specified, which may be established "upon a review of detailed affidavits and documentary evidence." *J & J Sports Prods. v. Emily Bar Rest. Inc.*, No. 15-CV-6499 (RJD), 2016 U.S. Dist. LEXIS 133905, at *5 (E.D.N.Y. Sep. 27, 2016) (citations omitted), *adopted by*, 2016 U.S. Dist. LEXIS 152074 (E.D.N.Y. Nov. 2, 2016).

### b. The Federal Communications Act of 1934

Plaintiff initially asserted claims under both Sections 605 and 553 of the FCA. Compl. ¶ 1. The "law in this Circuit is clear that a plaintiff may recover under only one of the statutes." *Circuito Cerrado, Inc. v. Pizzeria y Pupuseria Santa Rosita, Inc.*, 804 F. Supp. 2d 108, 114 (E.D.N.Y. 2011). However, Plaintiff appropriately requested damages under only Section 605 in his Motion for Default Judgment. Mot. Default J. at 2–3. Therefore, this Court will proceed to a discussion of Defendants' liability under Section 605 and the damages owed to Plaintiff as a result. *See, e.g., J & J Sports Prods. v. Brown*, No. 18-CV-2489 (RJD) (ST), 2019 U.S. Dist. LEXIS 5694, at *5

(E.D.N.Y. Jan. 10, 2019) (analyzing liability and damages under Section 605 where Complaint asserted claims under Sections 553 and 605 but requested damages under only Section 605 in default judgment motion), *adopted by*, 2019 U.S. Dist. LEXIS 23523 (E.D.N.Y. Feb. 12, 2019); *J & J Sports Prods. v. The Nest Rest. & Bar Inc.*, No. 17-CV-4107 (NGG) (RER), 2018 U.S. Dist. LEXIS 149579, at *4–5 (E.D.N.Y. Aug. 23, 2018) (same), *adopted by*, 2018 U.S. Dist. LEXIS 149579 (E.D.N.Y. Aug. 23, 2018).

## II.    Liability

Section 605 of the FCA states that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communications to any person." 47 U.S.C. § 605(a). The Second Circuit has interpreted this provision as applying to theft of cable communications originating as radio or satellite communications. *Cmty. Tv Sys. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002). Courts have also found that Section 605 may be violated "if at least part of the [e]vent's transmission was produced by satellite." *J & J Sports Prods. v. Abdelraouf*, No. 18-CV-2547 (ARR) (VMS), 2018 U.S. Dist. LEXIS 199728, at *9 (E.D.N.Y. Nov. 21, 2018) (citations omitted), *adopted by*, 2019 U.S. Dist. LEXIS 18677 (E.D.N.Y. Feb. 5, 2019).

### a.    277 Gold

Plaintiff makes a sufficient claim for relief against 277 Gold under Section 605 of the FCA. Since Plaintiff purchased and retains an exclusive closed-circuit commercial license to broadcast, distribute and sublicense the Program, 277 Gold could only legally broadcast the Program by entering into a licensing agreement with Plaintiff. Compl. ¶¶ 16–19; Gagliardi Aff. ¶¶ 3, 8. Plaintiff did not enter into a sub-licensing agreement with 277 Gold; nevertheless, the Program was exhibited to Defendants' patrons on September 12, 2015. Compl. ¶ 19; Smith Aff.; Gagliardi Aff.

¶ 7; Dkt. No. 12-1 (Plaintiff's Memorandum in Support of Application for Default Judgment) ("Mem. ISO") at 2.

Similar allegations have routinely been found sufficient to state a claim for relief under Section 605 of the FCA in this District. *See, e.g.*, *J & J Sports Prods. v. Morocho*, No. 18-CV-2302 (AMD) (RML), 2019 U.S. Dist. LEXIS 32482, at *7 (E.D.N.Y. Feb. 27, 2019) (finding establishment liable under Section 605 where plaintiff held exclusive closed-circuit licensing rights and establishment showed the program without entering into sublicensing agreement with plaintiff) (citation omitted); *Brown*, 2019 U.S. Dist. LEXIS 5694, at *5 (finding same and collecting cases). Therefore, this Court respectfully recommends that 277 Gold be held liable for unlawfully intercepting and broadcasting the Program in violation of Section 605 of the FCA.

### b. Barretta

Plaintiff also seeks to hold Barretta liable under Section 605 in his capacity as the principal and owner of 277 Gold. Compl. ¶¶ 7–8. Where a plaintiff establishes that an entity violated Section 605, individuals connected to the entity may also be liable "under the theories of 'contributory infringement' or 'vicarious liability.'" *J & J Sports Prods. v. LX Food Grocery Inc.*, No. 15-CV-6505 (NGG) (PK), 2016 U.S. Dist. LEXIS 162711, at *5 (E.D.N.Y. Nov. 22, 2016) (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997)). A corporate officer is liable under a theory of contributory infringement if that officer authorizes the violations. *J & J Sports Prods. v. Gonzalez*, No. 18-CV-2319 (RRM) (RER), 2019 U.S. Dist. LEXIS 80633, at *13 (E.D.N.Y. May 9, 2019) (citation omitted). Vicarious liability requires that a "corporate officer had (1) a 'right and ability to supervise' the company's activities and (2) 'an obvious and direct financial interest in the exploitation of copyrighted materials' by the corporate entity." *J & J Sports*

*Prods. v. Ahuachapan Corp.*, No. 17-CV-1184 (LDH) (PK), 2019 U.S. Dist. LEXIS 46240, at *6 (E.D.N.Y. Mar. 20, 2019) (quoting *Softel*, 118 F.3d at 971).

Here, Plaintiff alleges that Barretta, either personally or through his employees, "directed or permitted" the unlawful interception and broadcasting of the Program. Compl. ¶ 11. This claim hinges on Barretta being listed as a principal on 277 Gold's New York State Liquor License. *Id.* ¶¶ 8, 10. Under New York law, to qualify for a state-issued liquor license, Barretta must "be the owner [of the establishment], or . . . [have] control over the food and beverage at the premises . . . ." *Ahuachapan Corp.*, 2019 U.S. Dist. LEXIS 46240, at *7 (alterations in original) (quoting N.Y. Alco. Bev. Cont. Law § 106(1)). Even assuming Barretta was a corporate officer of 277 Gold, this fact alone does not necessarily imply that Barretta directed or permitted the unlawful interception and broadcasting of the Program. *See Gonzalez*, 2019 U.S. Dist. LEXIS 80633, at *14 (finding it illogical to infer that individual defendant authorized unlawful use based solely on allegations of corporate ownership) (citing *J & J Sports Prods. v. James*, No. 17-CV-5359 (NGG) (ST), 2018 U.S. Dist. LEXIS 126308, at *13 (E.D.N.Y. July 25, 2018)), *adopted by*, 2019 U.S. Dist. LEXIS 36208 (E.D.N.Y. Mar. 5, 2019). Thus, this Court cannot conclude that contributory liability applies to Barretta.

Alternatively, Plaintiff seeks to hold Barretta vicariously liable. Again relying on Barretta's name being listed on 277 Gold's New York State Liquor License, Plaintiff alleges that Barretta "had the right and ability to supervise the activities of 277 Gold Inc. which included the unlawful interception" of the Program. Compl. ¶¶ 9–10. Moreover, Plaintiff alleges that Barretta "had an obvious and direct financial interest" in the unlawful interception, which "resulted in increased profits" for Defendants. Compl. ¶¶ 13–14.

There is "disagreement as to whether a liquor license is enough to establish the first prong of the vicarious liability standard"—namely, the "right and ability to supervise the company's activities." *Gonzalez*, 2019 U.S. Dist. LEXIS 80633, at *16 (citation omitted). However, this Court need not reach a conclusion on the first prong, as Plaintiff's allegations ultimately fail on the second prong—namely, an obvious and direct financial interest. *See, e.g.*, *J & J Sports Prods. v. Crazy Willy's Bar, Lounge & Rest., Inc.*, No. 17-CV-1192 (NGG) (RML), 2018 U.S. Dist. LEXIS 128041, at *9 (E.D.N.Y. Jul. 30, 2018) (determining that "the court need not decide whether this allegation sufficiently establishes [the first prong] because Plaintiff has failed to satisfy the second prong"). To establish an obvious and direct financial interest, courts look to "whether 'the plaintiff showed direct financial gain, such as a cover charge on the night of the event[,] . . . [or] strong indirect evidence of financial gain, such as a bar hosting a large number of patrons, who would presumably purchase drinks during the broadcast.'" *Ahuachapan Corp.*, 2019 U.S. Dist. LEXIS 46240, at *7 (alterations in original) (quoting *LX Food Grocery*, 2016 U.S. Dist. LEXIS 162711, at *8).

On three separate occasions during the night on which the Program was broadcast, Smith, Plaintiff's investigator, counted the number of patrons at 277 Gold, finding twenty-three, twenty-three, and twenty-six patrons respectively, filling about a quarter of 277 Gold's capacity. Smith Aff. The Program was broadcast on five televisions. *Id.* Smith did not pay a cover charge, *id.*, and Plaintiff does not allege "that Defendants imposed a cover charge or a premium surcharge on its goods" during the broadcast. *LX Food Grocery*, 2016 U.S. Dist. LEXIS 162711, at *9. Moreover, "Plaintiff does not specify whether those patrons made any purchases, how this number compares to the number of patrons at the [establishment] on a typical night, or how many of these patrons were actually watching" the Program. *The Nest Rest. & Bar Inc.*, 2018 U.S. Dist. LEXIS 149579,

at *9–10 (rejecting claim of indirect financial gain where Plaintiff only alleged 35 patrons present at establishment).

Based on the foregoing evidence from the Complaint and Affidavits, this Court cannot conclude that Barretta had an obvious and direct financial interest in the infringement. *Compare J & J Sports Prods. v. McAdam*, No. 14-CV-5461 (PKC) (CLP), 2015 U.S. Dist. LEXIS 165126 (E.D.N.Y. Dec. 9, 2015) (financial interest found where establishment was at or over capacity with approximately 100 patrons and charged $20.00 cover), *with J & J Sports Prods. v. La Parranda Mexicana Bar & Restaurante Co.*, No. 18-CV-2622 (NGG) (RML), 2018 U.S. Dist. LEXIS 203582, at *4, 10 (E.D.N.Y. Nov. 29, 2018) (finding no financial interest where establishment had maximum capacity of 75 but only 26 patrons in attendance and investigator reported no cover charge), *adopted by*, 2018 U.S. Dist. LEXIS 215757 (E.D.N.Y. Dec. 20, 2018) *and Brown*, 2019 U.S. Dist. LEXIS 5694 (E.D.N.Y. Jan. 10, 2019) (finding no financial interest where establishment had maximum capacity of 85 but only 50 patrons in attendance and investigator reported no cover charge). Accordingly, vicarious liability cannot be established, and this Court respectfully recommends that Plaintiff's motion for default judgment be denied with respect to individual liability for Barretta.

## III. Damages

Plaintiff seeks statutory damages in the amount of $6,000.00 and enhanced damages in the amount of $18,000.00, as well as pre- and post-judgment interest. *See* Mot. Default J. at 3; Mem. ISO at 5. Plaintiff also requests that the Court grant thirty (30) days from the date judgment is entered to submit a motion for costs and attorneys' fees. Mem. ISO at 10. To support Plaintiff's damages request, Plaintiff submits: (i) the affidavit of Joseph Gagliardi, President of J & J (Gagliardi Aff., Dkt. No. 12-2 at 1–7); (ii) the contract granting Plaintiff exclusive nationwide

closed-circuit rights to the Program (Dkt. No. 12-2 at 9–16); (iii) the rate schedule for businesses of various sizes to obtain a license to broadcast the Program (Dkt. No. 12-2 at 18); and (iv) the affidavit of investigator Raymond Smith who observed the unlicensed broadcast of the Program at 277 Gold on September 12, 2015 (Smith Aff., Dkt. No. 12-2 at 23–24). This documentary evidence is sufficient for this Court to calculate damages without conducting a hearing. *See, e.g.*, *Emily Bar Rest. Inc.*, 2016 U.S. Dist. LEXIS 133905, at *5.

### a. Statutory Damages

A plaintiff who establishes liability under Section 605 of the FCA may elect between actual damages plus the defendant's profits, if any, and statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). If the plaintiff elects statutory damages, it may recover an award, per violation, "in a sum of not less than $1,000 or more than $10,000, as the court considers just." *Id.* § 605(e)(3)(C)(i)(II); *see also LX Food Grocery*, 2016 U.S. Dist. LEXIS 162711, at *10 (amount of statutory damages is "in the sound discretion of the court") (citation omitted). Courts in this Circuit generally award damages based on the greater of two calculations: either the flat-fee method or the per-person method. *McAdam*, 2015 U.S. Dist. LEXIS 165126, at *11 (citations omitted).

> Under the "flat fee" method, the court calculates the amount that defendants would have paid in exchange for the right to show the Event legally—in this case, Plaintiff's licensing fee. Under the 'per-person' method, damages are equal to the amount an individual consumer would have paid to view the Event pay-per-view, multiplied by the number of consumers who watched the illegally transmitted Event.

*LX Food Grocery*, 2016 U.S. Dist. LEXIS 162711, at *10–11 (citation omitted).

Plaintiff requests that the Court utilize neither approach and instead calculate statutory damages by multiplying the $2,000.00 licensing fee by three. Mem. ISO at 6. Plaintiff cites to a variety of cases outside this Circuit in support of its request. *See, e.g.*, *Joe Hand Promotions, Inc. v. Sheedy*, No. 04-CV-1797 (TLW) (TER), 2011 U.S. Dist. LEXIS 103681, at *12 (D.S.C. Jul. 29,

2011); *J & J Sports Prods. v. Tonita Rest., LLC*, No. 13-CV-382 (REW), 2015 U.S. Dist. LEXIS 171978, at *15 n.8 (E.D. Ky. Dec. 28, 2015). In keeping with recent decisions in this District, this Court declines to deviate from the standard methodology used to calculate statutory damages in the Second Circuit. *See, e.g.*, *J & J Sports Prods v. Orellana*, No. 18-CV-2052 (KAM) (VMS), 2019 U.S. Dist. LEXIS 40695, at *14 (E.D.N.Y. Mar. 13, 2019); *J & J Sports Prods. v. Inga*, No. 18-CV-2542 (PKC) (RLM), 2019 U.S. Dist. LEXIS 48067, at *14 (E.D.N.Y. Mar. 22, 2019); *J & J Sports Prods. v. Guncay*, No. 18-CV-2097 (FB) (RML), 2018 U.S. Dist. LEXIS 180921, at *10 (E.D.N.Y. Oct. 16, 2018), *adopted by*, 2018 U.S. Dist. LEXIS 204144 (E.D.N.Y. Dec. 3, 2018).

Here, Plaintiff has not offered any evidence with respect to the per-person method. Thus, in order to calculate per-person statutory damages, this Court "assumes a $54.95 residential fee in light of evidence presented by Plaintiff in other cases." *J & J Sports Prods. v. Boyd*, No. 17-CV-6822 (ENV) (AYS), 2018 U.S. Dist. LEXIS 197166, at *10 (E.D.N.Y. Nov. 16, 2018) (citing *McAdam*, 2015 U.S. Dist. LEXIS 165126, at *11), *adopted by*, 2019 U.S. Dist. LEXIS 11862 (E.D.N.Y. Jan. 9, 2019). Plaintiff's investigator counted the number of patrons at 277 Gold on three occasions during the night Defendants unlawfully broadcasted the program, finding twenty-three, twenty-three, and twenty-six patrons. Smith Aff. Thus, there were at most twenty-six patrons viewing the Program, which, multiplied by $54.95, would result in $1,428.70 in statutory damages under the per-person method. Alternatively, applying the flat fee method, 277 Gold would have paid a $2,000.00 commercial sublicense fee to broadcast the Program. *See* Gagliardi Aff. ¶ 8; Mem. ISO at 8. Since the amount yielded under the flat fee method is greater than the per-person method, this Court will adhere to the standard practice in this District and recommend an award of statutory damages in the amount of $2,000.00 under the flat fee method. *See, e.g.*, *Boyd*, 2018 U.S. Dist. LEXIS 197166, at *11; *LX Food Grocery*, 2016 U.S. Dist. LEXIS 162711, at *11.

**b. Enhanced Damages**

Plaintiff further requests enhanced damages. Mem. ISO at 9. The FCA provides that if any violation of Section 605(a) "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." 47 U.S.C. § 605(e)(3)(C)(ii). "Willfulness is defined as 'disregard for the governing statute and an indifference for its requirements.'" *El Ojo Aqua Corp.*, 2014 U.S. Dist. LEXIS 136024 at *18 (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126–27 (1985)).

Many courts in this Circuit have concluded that intercepting and broadcasting a televised event without permission constitutes willful conduct for purposes of commercial advantage. *See James*, 2018 U.S. Dist. LEXIS 126308, at *19 (collecting cases); *see also Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc*., 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Given the weight of authority in this Circuit and Plaintiff's assertion that its "programming is not and cannot be mistakenly, innocently or accidentally intercepted," Gagliardi Aff. ¶ 9, this Court recommends finding that 277 Gold's conduct in broadcasting the Program without a license was willful. *See, e.g.*, *Morocho*, 2019 U.S. Dist. LEXIS 32482, at *14 (E.D.N.Y. Feb. 27, 2019) ("The fact that [Defendant] broadcast the Program without authorization establishes the willfulness of its conduct.").

Having established 277 Gold's willfulness, this Court must weigh several factors in determining whether and in what amount to award enhanced damages, including "whether there is evidence of (i) repeated violations; (ii) significant actual damages suffered by the plaintiff; (iii) substantial unlawful monetary gains by defendant; (iv) defendant's advertising of the event; and

(v) defendant's collection of a cover charge or premiums for food and drinks." *James*, 2018 U.S. Dist. LEXIS 126308, at *19 (citations omitted). In determining the amount of enhanced damages to be awarded, Courts in this District have taken varying approaches, ranging from applying a multiple of two or three times the amount of statutory damages, to applying an amount equal to statutory damages, or denying enhanced damages entirely. *Morocho*, 2019 U.S. Dist. LEXIS 32482, at *14 (citing *J & J Sports Prods. v. Afrikan Poetry Theatre, Inc.*, No. 17-CV-2196, 2018 U.S. Dist. LEXIS 32954, at *16 (E.D.N.Y. Feb. 27, 2018) (collecting cases), *adopted by*, 2018 U.S. Dist. LEXIS 60804 (E.D.N.Y. Apr. 10, 2018)).

Here, none of the aggravating circumstances in the aforementioned five-factor test are present. Plaintiff complains only of one violation by 277 Gold and has submitted no evidence as to the amount of 277 Gold's monetary gains, 277 Gold's advertisement of the Program, a cover charge, or a premium placed on food or drinks. The only actual damages suffered by Plaintiff—namely, Defendants' failure to pay the $2,000.00 licensing fee—has already been accounted for in the Court's recommended statutory damages award. *See J & J Sports Prod. v. Leon*, No. 18-CV-2103 (PKC) (RML), 2019 U.S. Dist. LEXIS 48202, at *17 (E.D.N.Y. Mar. 22, 2019) (citation omitted).

Nevertheless, even in cases where none of the five factors militates in favor of awarding enhanced damages, courts in this Circuit have awarded "enhanced damages as a deterrent to the problem of persistent signal piracy and to compensate Plaintiff for intangible losses such as business investment, business opportunities, reputation, and goodwill." *See J & J Sports Prods. v. GPN Bar Inc.*, No. 15-CV-6504 (FB) (ST), 2016 U.S. Dist. LEXIS 174514, at *15 (E.D.N.Y. Dec. 15, 2016) (awarding enhanced damages equal to statutory damages) (citation and internal quotation marks omitted); *J & J Sports Prods. v. LDG Williams, LLC*, 2011 U.S. Dist. LEXIS

128558, at *5 (E.D.N.Y. Nov. 7, 2011) (same). The Court finds that merely awarding Plaintiff the cost of the fee to broadcast the Program as statutory damages would insufficiently deter future signal piracy and insufficiently compensate Plaintiff for these intangible losses. The Court therefore recommends an award of enhanced damages of $2,000.00, which is equal to the award of statutory damages recommended by the Court, for a total award of $4,000.00.

### c.  Pre- and Post-Judgment Interest

In addition to statutory and enhanced damages, Plaintiff seeks to recover pre- and post-judgment interest at the federal statutory rate. Mot. Default J. at 3. As the FCA does not expressly provide for pre-judgment interest, courts retain the discretion to award pre-judgment interest where necessary in the interest of fairness to the aggrieved party. *Leon*, 2019 U.S. Dist. LEXIS 48202, at *17 (citing *Wickham Contracting Co. v. Local Union No. 3, IBEW*, 955 F.2d 831, 835 (2d Cir. 1992)). Courts should not, however, award pre-judgment interest where doing so would be punitive in nature. *LX Food Grocery*, 2016 U.S. Dist. LEXIS 162711, at *14. Because statutory damages under the FCA are often construed as being "analogous to punitive damages," courts typically decline to award pre-judgment interest pursuant to these violations. *Id.* (quoting *J & J Sports Prods. v. La Ruleta*, No. 11-CV-4422 (NGG) (VVP), 2012 U.S. Dist. LEXIS 123118, at *13 (E.D.N. Y Aug. 7, 2012), *adopted by*, 2012 U.S. Dist. LEXIS 123111 (E.D.N.Y. Aug. 27, 2012)).

However, no such legal barrier to awarding post-judgment interest exists. *See, e.g.*, *Morocho*, 2019 U.S. Dist. LEXIS 49687, at *17 (awarding post-judgment interest at the federal statutory rate); *Inga*, 2019 U.S. Dist. LEXIS 48067, at *18 (same); *Leon*, 2019 U.S. Dist. LEXIS 48202, at *19 (same); *Orellana*, 2019 U.S. Dist. LEXIS 40695, at *16 (same). Therefore, this

Court respectfully recommends denying Plaintiff's request for pre-judgment interest but awarding post-judgment interest.

### d. Attorneys' Fees and Costs

Plaintiff lastly requests thirty (30) days from the date judgment is entered to submit a request for attorneys' fees and costs. Mot. Default J. at 3. The FCA stipulates that courts "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Because a prevailing party is statutorily entitled to recover these damages, this Court respectfully recommends that Plaintiff's application to submit a request for attorneys' fees and costs 30 days from the entry of judgment be granted. *See, e.g.*, *Inga*, 2019 U.S. Dist. LEXIS 48067, at *17 (granting plaintiff 30 days to submit separate motion with supporting documentation for costs and attorneys' fees); *Morocho*, 2019 U.S. Dist. LEXIS 49687, at *16 (same); *J & J Sports Prods. v. Babar*, No. 17-CV-5331 (JMA) (AYS), 2019 U.S. Dist. LEXIS 73565, at *4 (E.D.N.Y. May 1, 2019) (same).

### CONCLUSION

For the foregoing reasons, this Court respectfully recommends the following:

(1) Plaintiff's motion for default judgment against 277 Gold be granted, but that Plaintiff's motion for default judgment against Barretta be denied and the claims against him dismissed;

(2) Plaintiff be awarded $4,000.00, consisting of $2,000.00 in statutory damages and $2,000.00 in enhanced damages;

(3) Plaintiff be awarded post-judgment interest but denied pre-judgment interest; and

(4) Plaintiff be permitted to file a motion for costs and attorneys' fees no more than thirty (30) days after the entry of judgment.

Plaintiff's counsel is directed to serve a copy of this report and recommendation on all Defendants at their respective last known addresses and file proof of service with the Court within five (5) business days of the date of this report and recommendation.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
September 10, 2019